May it please the Court, Nicole Saperstein, Federal Defenders of San Diego, for the appellant Nelson Campos-Nunez. There was no evidence of structure presented at trial, yet the prosecutor gave personal assurances to the jury that Mr. Campos was recruited and paid by a drug organization, and that he had to know about the drugs in the vehicle because that was the only way the drug organization could work. Under Witherspoon, these arguments constituted vouching, because they conveyed the impression that the prosecutor had information about Mr. Campos-Nunez that was not presented to the jury and gave the personal assurance and power and prestige of the government behind those statements to support them. In Vallejo, this Court held that the testimony regarding the modus operandi of drug organizations unfairly portrays the defendant. Ginsburg. What did he say about the modus operandi? He used the word organization. He used the word recruit. And some – recruit just means somebody got him to do this, right? It didn't – that doesn't mean it was any major group. Organization means, again – I mean, one of the problems is that you're sort of reading into this a whole background of what goes on in other cases, but if you were a naive jury and you just heard those words, why would you think that there was a major structural organization behind all this? Sure. And it's not just that the prosecutor used the word drug organization on three different occasions during closing and rebuttal closing. It was also that she went into describing the various roles within that organization that under other individuals would play. And under Vallejo, that's exactly what the Court means by structure. Your client doesn't – doesn't pretend that he's doing this himself. He's saying he doesn't know anything about it. So by anybody's theory, somebody else is responsible for the – for the drugs. How is this any different? Your guy's saying there's an organization responsible. I'm a dupe. I don't know about it. They're hiding it there. I don't see how that speaks to the guilt or innocence of your client at all. It's claiming third-party culpability simply is a very different – But your client's claiming third-party culpability. Right. But what I'm saying is that – It's okay. Everybody's saying the third party's culpable. But I think the big distinction is that Mr. Campos Nunez was saying two other individuals who had sold him the car had set him up, and that was the third-party culpability that he was referring to, while the prosecutor was saying the third-party culpability was actually a drug organization. And under Vallejo – Possibly working with those two people. I mean, somebody else is doing it. The issue – the jury has to decide is whether your client's doing it, and I'm not sure how the reference to organization speaks to that or paints the trial. Because I think that when the jury, especially in the San Diego area, hears drug organization, they think of the cartel. And the prosecutor plainly was stating that he was aware of the drugs in the car because of his membership in this drug organization and the role that he was playing within it. At various points during closing and rebuttal closing, she specifically stated there are specific highly trained people at a prearranged location that are going to be removing these drugs from the vehicle. Where is that? That is at – Can you just give me one moment? I can come back to that in one moment. I do have it. So it's not just the – I mean, the fact that these were compartments secreted within the tires and carried a significant amount of drugs within a number of compartments, isn't it a fair inference that somebody who knows what they're doing with the tires is going to be taking the drugs out of the compartments? There was actually testimony by their car expert in trial that you could simply remove the tires off the car, slice them open and open the compartments. And so to say that specific highly trained individuals at a specific prearranged location were going to be doing this was taking it into an impermissible structure argument. To come back to where that quote was, it's at the record at 253 to 254. And the exact quote was, you have to get to a specific prearranged place where trained people can get these narcotics out, where they can get to the people who are going to distribute them to the customer that is going to pay $330,000, that is going to make its way back to the person who owns the drugs. Of course, there was evidence in the record of cost. There was evidence in the record that this is like a business. And there was testimony that this was like a business. But it's a very different thing to say that marijuana is a commodity and it's like a business to then say that Mr. Campos was a part of a drug organization, was recruited and paid by that organization. There was simply no evidence presented of any of those things. And had the government tried to present that testimony, it likely would have been considered inadmissible. And that's likely why at the Motions Eliminate hearing, they represented that they would not offer such testimony. And when Special Agent Schwerer, when he was testifying as to value, started getting into that line of bringing up those sorts of things, there was a structure objection by the defense. The judge instructed the prosecutor to ask another question, and the testimony kind of went in a different direction. When it started coming up again, the judge said, I am going to sustain this. Move it along. Because in recognition of the line of case law that's come out of this circuit in Vallejo, in Varela Rivera, in Pineda Torres, and in McGowan, that this type of testimony isn't permissible because of how prejudicial it is. There was just simply no information tying Mr. Campos Nunez to a drug organization. And so to be just – and I think what was more – I'm prepared to discuss the Daubard issue as well. In addition to the – in addition to the problems with closing argument, there was also the issue with the testimony of Russ Butler. Although the government – the defense was able to voir dire Mr. Butler before the court accepted that testimony, the court really did say at the Motions Eliminate hearing that she was prepared to accept the testimony without even hearing what the judge's opinions were. But she did hear them, didn't she? She actually did not until the testimony actually came out. And so she was already sort of giving her inclination at the Motion Eliminate hearing that she was going to allow him to testify because he does testify very frequently in our district. And I think that this is a reoccurring problem that happens, that the district judges are saying, okay, well, because he testified in another case, he must be qualified to testify in this case. But I'm not sure that any of the district judges are really going through a reliability analysis on this testimony. And I think there have been other cases that have been before this Court. I know one from one of my colleagues that had a memo disposition. But nobody is engaging in this reliability analysis of the methods that he's using. And so while the voir dire of Mr. Butler did present just basically his qualifications, it didn't say what the – what the precise bases for his opinions were. And he gave very specific opinions and testimony. And there was no testimony of what tests were done for that, what he was basing those opinions on. He gave very specific miles per hour that these effects would be occurring at. He said that basically the car would be bouncing down the road and that the tires would blow out entirely at highway speeds. Sotomayor. Can I ask you a question about that? Sure. Putting aside the highway speed point, what do you do with the consistency of what he described without driving the vehicle to what the law enforcement officer who did drive the vehicle described? There was a fair amount of corroboration there. How does that affect your analysis? And I think that – I think that it does affect it a little bit. But I think that what was more – I think what was the really persuasive part during the government's closing argument was the argument that these tires would have just blown out completely, that Mr. Campos would have been stranded at the other side of the road, would have needed to request, you know, service, roadside assistance, and that that was a really persuasive argument that someone would have had to know about the drugs in the car so that they wouldn't call law enforcement. That went way beyond the scope of what Officer Blanchett testified to. But suppose we thought there was a jabbering problem. What would we do about it now? The correct remedy in this case would be to remand back for another reliability determination by the district court. I thought we had recently said that that's not how we do things. Do we have a new odd bank opinion, Dr. Barabin? I have not read that opinion. All right. But in addition to those – in addition to those problems, you know, going far beyond what Officer Blanchett testified to without any basis in the record was really a problem in terms of what tests were performed, what he was basing his opinions on. So to say that there was going to be an extremely loud, roaring noise that would have been apparent to anyone that was even a passenger in the car, that the car would literally be bouncing down the road, and then that the tires would blow out, Officer Blanchett didn't testify to any of those things. And there was nothing that Mr. Butler testified to about how he was coming to those opinions, just other than saying he essentially changed tires in the past at Butler Auto Mechanics. And so when you look at it at the Daubert standard, this couldn't possibly have met that standard, because the district court just simply wasn't aware of what he was basing these opinions on, and so they couldn't have possibly made a reliability determination. And so not only did she not go through the factors, but there just simply wasn't enough evidence before the district court for her to have analyzed those factors. And so I think it's pretty clear that she didn't go through those factors and simply accepted Mr. Butler's testimony, because she was aware that he had testified in the past in other cases, which can't be enough. In addition to that, the last error that I put forth was that Officer Hernandez was permitted to testify that Mr. Campos looked defeated and looked like he had been caught, which was extremely prejudicial to have a law enforcement officer up on the All right. You've used your time. Thank you. We'll give you a minute in rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Patrick Bumate for the United States. This case is about whether or not the government could argue in rebuttal or in closing that an appellant was, quote, unquote, recruited, or that a drug organization, quote, unquote, owned the marijuana that was found in the defendant's car, the appellant's car. This Court's precedent has said that government's counsel can make reasonable inferences from the evidence in the record and may respond to arguments made by defense counsel. In this case, the government made the types of arguments that the appellant is complaining of because they made the argument that he was an unknowing courier, a term that they raised for the first time, a term that is a term of art that's used in structure evidence. I think the best way to But you didn't put any evidence on it. In other words, even if you could have put on structure evidence, you didn't put it on. That is correct. All right. So therefore, the question isn't so much whether you could have put on the evidence. It's whether you could have made statements in closing argument based on evidence that wasn't there. That's correct. And the record shows that there is ample evidence in the record to make the type of inferences that a government made in this case. I think it's instructive to look at what all sides agree is not improper argument in this case, that defense counsel has not objected to below and is not objecting to here, is that the government started their closing arguments noting that the importation of marijuana involves, quote, unquote, the drug trafficking business. And where marijuana is a commodity and it's governed by the principles of supply and demand. Those are the types of statements that the government started their closing argument with and defense counsel is not arguing about. And the statements that the defense argument is arguing about now are just degrees of separation from those statements. Well, there may be a difference between a mom-and-pop operation and the Wal-Mart of the drug industry. What's the basis for saying it was all so sophisticated? I don't think the term sophisticated was ever used by government's counsel in this case. The term cartel was never used by government's counsel. The term highly trained was never used. And the government's counsel never used personal assurances that any of this is true. The government's counsel purely made inferences from evidence in the record. Evidence in the record is that drugs is like a business, that the pricing and movement is like a business of drugs. Marijuana in this case had a value of over- The problem, I think, is that we're in San Diego in 2014 and there's code words, right? And you did talk about the organization and you talked about the organizational structure. Correct. And to people in San Diego in 2014, that has some meaning. That's a possibility, but the word organization has a meaning, you know, in common parlance throughout, you know, everyday life. And there's no appeal to that type of specialized San Diego-centric knowledge on the term drug organization. In fact, I looked at what the dictionary defines organization is and one of the definitions was a business. And that's exactly the type of evidence that we see in this case. Can I ask you a question that's related? What is your best authority, your best case for your position that arguments that drug traffickers, organizations don't give large amounts of drugs worth a lot of money to people who don't know what they're carrying is not prohibited as to be, is not within the ambit of structure, which we had no evidence of and the government said they weren't going to introduce evidence of, or drug courier profile kind of evidence, which we didn't have any of? Yes, Your Honor. First of all, we've never made the argument, the government never made the argument below that drug trafficking organizations do not trust large quantities of narcotics to couriers. The argument made by defense counsel, I mean, by the government below is that because of the nature of the compartments in this case where it is so noticeable that he had  Exactly. So there was nothing of the sort of Let's take, for example, one of the sentences was people are recruited in this job every day. Was there any evidence of that? Frankly, Your Honor, I think that one sentence is probably the closest to the line. But I don't think it does cross that line. There was no direct evidence of people are recruited every day. But I think the government was trying to appeal to, you know, the Court mentioned the San Diego juror, San Diego juror. In their common sense and experience, they probably know that drugs cross the border every day, and that's the type of That wasn't the question. It doesn't say drugs cross the border every day. It says people are recruited to this job every day. That's correct. And I think the point was simply that recruitment of couriers is commonplace, that it happens frequently. And that statement was in direct response to defense counsel's argument that because Mr. Campos Nunez was a massage therapist and he had a job and then he had children, that he would not be someone that would agree to cross drugs into the United States. And in that respect In order for this organization to get this marijuana out of the – that is critical for the people. But this organization suggests that we're talking about a particular organization. And was there any evidence of that? Well, I mean, defense counsel's own argument was that a gentleman named Guero and a gentleman named Tony were the ones that put the drugs in his car, and that they had the ability to follow the defendant through the port of entry. Right. That raises the specter of an organization. We were just following up on those statements. And so ordinarily, if you didn't know anything else, if this was a black box, you would say that two people putting something, marijuana, into a truck and following them is an organization? It certainly fits the definition. Is it English? Yes. Is it what you would say? No. I mean, I guess it's a matter of semantics. You weren't trying to allude to something else. Yeah. I mean, it basically alludes to the fact there are more than one people that own this drug, and it's not Mr. Campos Nunez in this case. And with respect to the statement about people recruit every day, I think the Court did a great job in that – with that respect. Even though there was an objection raised and she didn't sustain it, she did say to the jurors and monister jurors, rely on your own independent recollection of the facts that you heard from the witness stand. So even if that approaches any error, it was cured right away by the district court with that instruction. Could you address the Dabbert issue? I mean, wasn't there a completely inadequate Dabbert determination made here? I don't think so, Your Honor. There wasn't one, essentially. There wasn't one. And I believe the Ninth Circuit has said that there is no requirement that district court judges hold a pretrial Dabbert hearing. But you have to make some findings, don't you? I think that would be true. And in this case, the district court would have made implicit findings in omitting Mr. Butler as an expert witness. There was ample opportunity. Well, why was he an expert, for example, on whether cars – whether there would have been a blowout at a certain speed? I mean, apparently he doesn't even do tires himself. He did in the past. Yeah, 30 years ago or something. Excuse me? Many, many years ago. I don't know how long ago, but at some point he started contracting out the fixing of tires to some other company. But he testified that he himself has worked with putting on tires. He's balanced tires. How does that tell him at what speed something will happen? And there's no other evidence on the record of that, is there? Well, I mean, there was evidence from Officer Blanchett that as he increased the speeds over about 45 miles per hour, that the shaking was immense and it was like driving cement tires. At some point, if you keep on going faster, cement tires will break. And I think that is a proper evidence. But that's not the basis of Mr. Barber's testimony, was it? That is not the basis. I sit there. He might have had a basis, but it appears to me it was never articulated and the district court didn't make any findings as to the basis for his or what his findings were based on. The district court, I mean, he did testify a lot about what his experience with tires were in this case. And I don't believe he testified anything to the fact of when they would explode. But I think with comment, with the ---- I mean, you would expect somebody who was going to testify to that to be some sort of scientist who would say, you know, that could tell you if you ask them that there are formulas for when that's going to happen. That's not this guy. I disagree with that. I think someone with 30 years of experience in automotive ---- He didn't have 30 years of experience in tires. He wasn't a tire guy. But he was a car person. Right. And someone that knows things about car's experience when tires go out. And then you have to know findings made. So suppose we thought it was all a problem. What do we do next? I think we would argue that it's harmless error and that the judgment would still be affirmed. In this case, there was ample foundation laid for the type of evidence that he testified to. And there was ---- Wait a minute. You're saying that the harmless error is the fact that there was no Dauber determination made, or you're saying the harmless error doesn't ---- my understanding of harmless error in this context is if you took his testimony out, you'd be in the same place, not that it would be okay to let the testimony in. I thought the ---- I believe that the harmless error would be the fact that there was no finding of reliability. But if the Court were to review the record, they could find reliability in this case based off of the strong foundation laid by Mr. Butler about it. Well, suppose we didn't think that. Suppose we thought that he was unreliable. We couldn't figure out why ---- where he had the authority or the reliability to say anything about when the tire was going to blow up or that it was going to blow  Yes, Your Honor. Well, if you wanted to strike Mr. Butler's testimony completely, then it's ---- nothing changes because of the testimony of Officer Blanchett, which is precisely ---- Are you aware of the Barabin case? I'm not. I apologize, Your Honor. That's very helpful. Okay. And there was one other issue I would like to raise on the issue of Officer Hernandez's testimony and whether or not his testimony that he was defeatist or that he was caught is proper. I don't think my brief made it clear, but there was no objection to the statement that he said that Officer Hernandez believed that he communicated that he had been caught. That, I think, would be subject to a plain error standard because there was no objection in that case. And it's important in that ---- What was the objection to? Excuse me? Was there an objection? There was not to that particular statement. There was an objection to defeatist. Defeatist, yes.  And that would be under the harmless error standard. But the statement that he had been caught, I think, is under plain error. And there's plainly no obvious Ninth Circuit opinion saying that something like that is error. So even if that is an error, it should still be upheld as not being plain error. Was that testimony referred to an argument? I don't believe the term caught was ever used in argument. The term defeated was used by closing argument, by the government's counsel in closing argument. Okay. Thank you very much. Thank you, Your Honor. I'll give you one minute. First, just to address the last point, the prosecutor in rebuttal closing did say or I believe actually was in regular closing a guilty posture. And so I do think that that's comparable to the testimony like he was caught. In addition to that, the number of objections that I had lodged at that point to this entire line of testimony was fairly overwhelming. We knew that this was coming from the government's trial memorandum and addressed it before the start of evidence. And so at that point, the objections had been overruled so many times, and the district court had made it very clear that she was permitting this type of testimony. And so I believe that any further objections at that point would have been futile. In addition, saying that someone looks like they had been caught and looking like you have a defeatist manner are very similar opinions. And so I believe that the district court had already made their opinion known on that front. In addition to that, the government clearly in closing argument relied on Mr. Butler's testimony regarding the blowout of the tires, stating, the marijuana shouts its presence by a dangerous shredding of that vehicle, eventually through the failure of the tires themselves. If you drive at high sustained speeds for not a long period of time, and that's at the record at 255, pull over, call roadside assistance, hello, send somebody to check my tires, flag down a cop. And so clearly this testimony was fairly persuasive and repeated during both rebuttal closing and closing argument. And so I do think that it affected determination in this case. I do think that the jury would have considered it very strongly, and especially when taken in conjunction with the other errors in this case, that these errors can't be considered harmless. This was a circumstantial evidence case. Mr. Campos-Nunez did not confess. And I think it's notable that this court has found error in cases where there have been, that there have been confessions and that there have been, particularly in Vallejo that the defendant had said his friend didn't want to drive the car because he told him that there were drugs in it. And error was still found in Vallejo. And so I do think that this was a case where the errors were not harmless. If you look at Witherspoon, for instance, that was partial plain error, partial harmless error. And that case was still reversed, even though it was partially plain error, because of the harm that the vouching did in that case. So I think when you take it all together, that the errors definitely deprived Mr. Campos of a fair trial. Thank you. Thank you. Both of these cases, United States v. Campos-Nunez, submitted, and we will take a break.
judges: Rosenthal, BERZON, CLIFTON